IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARK JOSEPH and MARY JOSEPH, | ) | Case No. 8:05CV0421 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| WESTERN STAR TRUCK SALES, INC., | ) | |
| and DETROIT DIESEL CORPORATION, | ) | |
| | ) | |
| Defendants**.** | ) | |

**BRIEF IN SUPPORT OF WESTERN STAR TRUCK SALES, INC.'S
MOTION FOR SUMMARY JUDGMENT**

PREPARED AND SUBMITTED BY:

Bryan S. Hatch, #21009
Victor C. Padios, #23265
Stinson Morrison Hecker LLP
1299 Farnam Street, Suite 1501
Omaha, NE 68102
(402) 342-1700
Attorneys for Defendants

# INTRODUCTION

This is a U.C.C. breach of warranty case in which Plaintiffs have alleged various defects with a 2004 Western Star truck, VIN 5KJJABCK34PM20541, (the "Truck"), and the Truck's 14.1 liter Series 60 Detroit Diesel engine (the "Engine") which was purchased in August of 2003. Even though Plaintiffs sold the Truck in December of 2004, receiving fair market value commensurate with a truck free of defects, Plaintiffs brought this lawsuit alleging causes of action against Western Star for Breach of Contract/Warranty (Count 1), Violation of Lemon Law (Count 2), and Breach of Implied Warranties (Count 3). See Amended Complaint ¶¶ 12-23.

Plaintiffs' claim for breach of contract/warranty fails as a matter of law because the alleged defects fall outside of the scope of coverage of the express warranty. At the time of purchase, Plaintiffs were offered and accepted a limited express warranty (the "Western Star Warranty") that did not apply to the Engine, disclaimed all implied warranties, excluded consequential damages, and limited the Plaintiffs' remedy to the repair or replacement of any defective component or part. Additionally, Plaintiffs cannot show that they were damaged by any alleged defect because they received fair market value for the Truck when they sold it in December of 2004, after having driven it over one-quarter of a million miles during a fifteen (15) month span. As a result, the Court should enter summary judgment in favor of Western Star on Count 1 Breach of Contract/Warranty.

Plaintiffs also cannot maintain their cause of action for violations of the Lemon Law. Plaintiffs cannot establish that they afforded Western Star the required "reasonable number of [repair] attempts," provided Western Star with the requisite notice, or demanded a new truck from Western Star. Additionally, the undisputed facts demonstrate that no defect in the Truck

1

substantially impaired its market value. Consequently, the Court should enter summary judgment in favor of Western Star on Count 2 Violations of the Lemon Law.

Finally, the Western Star Warranty expressly disclaimed <u>all</u> implied warranties, including the implied warranty of merchantability and any implied warranty of fitness for a particular purpose. The disclaimer complied in all respects with Neb. Rev. Stat. U.C.C. § 2-316. As a result, the Court should enter summary judgment in favor of Western Star on Count 3 of Plaintiffs' Amended Complaint.

For these reasons, summary judgment in favor of Western Star is appropriate on all of Plaintiffs' claims.

## UNDISPUTED STATEMENT OF FACTS ("SOF")

### Plaintiffs Purchased the Truck

1. Plaintiffs purchased a 2004 Western Star Truck, VIN 5KJJABCK34PM20541, (the "Truck"), with a 14.1 liter Series 60 Detroit Diesel engine (the "Engine") in August of 2003 for $103,500. Amended Complaint at ¶ 6.

2. Plaintiffs accepted Western Star's Limited Warranty ("Western Star Warranty") by executing a Customer Warranty Acknowledgement Form. Amended Complaint at ¶ 7; Deposition of Mark V. Joseph ("Mark Joseph Dep.", excerpts attached as Exhibit 1, at pp. 6:13 – 7:3); the Customer Warranty Acknowledgment Form and the Western Star Warranty are attached as Exhibit 2.

### The Western Star Warranty

3. The Western Star Warranty states that the Truck is "manufactured to the specifications agreed upon and free from defects in material and workmanship" except those components and parts that are specifically excluded. Exhibit 2 at p. 8.

4. The Western Star Warranty includes a Limited Warranty, Warranty Disclaimer, and Limitation of Liability. Exhibit 2.

5. The Western Star Warranty expressly excludes coverage of the Engine by providing:

> **This warranty does not apply to engines, Allison transmissions, tires, or other components or parts which are not manufactured by Western Star Trucks and which are warranted directly by their respective manufacturers, or to routine maintenance requirements as described in the operator's and maintenance manuals. With respect to the foregoing, Western Star Trucks makes no warranty whether express, implied, statutory or otherwise including, but not limited to, any warranty of merchantability or fitness for purpose.**

(Exhibit 2 at p. 8) (emphasis in original).

6. Under the heading "**Purchaser's Exclusive Remedy**," the Western Star Warranty expressly limits Plaintiffs' remedy to repair or replacement of defective components or parts:

> Western Star's sole obligation shall be the repair or replacement, at Western Star Trucks' option, of any defective component or part thereof. Such repair or replacement shall be without cost to Purchaser when performed within the time or distance limits, whichever occurs first.

(Exhibit 2 at p. 9).

7. Under the heading "**Limitation on Liability**," the Western Star Warranty disclaims consequential damages:

> **In no event shall Western Star Trucks be liable for special or consequential damages including, but not limited to, injuries to persons or damage to property, loss of profits or anticipated profits, or loss of vehicle use.**

(Exhibit 2 at p. 9) (emphasis in original).

8. The Western Star Warranty also expressly disclaims all implied warranties:

3

> **The foregoing limited warranty is exclusive and in lieu of all other warranties whether written, oral or implied including, but not limited to, any warranty of merchantability or fitness for purpose.**
>
> **This limited warranty specifically excludes any other warranties or conditions provided for by law, whether statutory or otherwise.**

(Exhibit 2 at p. 8) (emphasis in original).

### Plaintiffs Sold the Truck for Fair Market Value

9. On December 2, 2004, Plaintiffs sold the Truck to Omaha Truck Center in Omaha, Nebraska, and purchased a 2005 Freightliner truck. Affidavit of Lee Grund ("Grund Affidavit") at ¶ 3, attached as Exhibit 3. True and correct copies of the purchase contract and invoice of the December 2, 2004, transaction are attached as Exhibits A and B, respectively, to the Grund Affidavit.

10. Plaintiffs sold the Truck for $77,000.00, its actual and fair market value. Grund Affidavit at ¶ 7; Affidavit of Dave Struby ("Struby Affidavit") at ¶ 4, attached as Exhibit 4.

11. When they sold the Truck, an intake inspection revealed no problems with or defects in the Truck and, therefore, no problem or defect had any impact on the Truck's actual and fair market value. Grund Affidavit at ¶¶ 4 and 6; Struby Affidavit at ¶¶ 7 – 10.

12. At the time of the Trade, the Truck had 251,651 miles on it and had been in service for over fifteen (15) months between August 30, 2003, and December 2, 2004. Grund Affidavit at ¶ 5.

13. On February 2, 2005, Omaha Truck Center resold the Truck to Truck Specialist, Inc. for $77,400.00. Grund Affidavit at ¶ 8. A true and correct copy of the invoice of the sale to Truck Specialist, Inc. is attached as Exhibit D to the Grund Affidavit.

**The Present Action and Alleged Problems with the Truck**

14. Plaintiffs alleged five (5) issues with the Truck unrelated to the Engine: (a) an air leak in the air bag under the driver's seat; (b) a problem with the air conditioning system; (c) minor electrical problems; (d) squeaking and chaffing in the cabinets in the bunk; and (e) the drive axles slinging axle grease. Mark Joseph Dep. at p. 9:8-11:11; 68:10-14.

15. Plaintiffs admitted that the air bag under the drivers seat, the air conditioning system, and various minor electrical problems were all repaired. Id. at pp. 19:25–20:7; 20:11-22:24; 29:9–30:8.

16. Plaintiffs contend that two issues with the Truck were never resolved: squeaks in the cabinets in the bunk and the grease coming from the drive axles. Mark Joseph Dep. at pp. 18:25–19:1; 27:17-21.

17. Despite receiving fair market value of $77,000.00 for the Truck in December of 2004, Plaintiffs seek damages in the amount $103,500.00 (the original purchase price of the Truck), even after they had driven it over 250,000 miles. Amended Complaint at p. 4.

18. Plaintiffs also seek consequential damages for "incurred lodging and other expenses" in the amount of $3,500 plus additional damages in an amount they "still don't know." Amended Complaint at ¶ 15; Mark Joseph Dep. at pp. 89:21 – 90:25; 126:7 –22.

19. Plaintiffs never made any oral or written demand for a new truck from Western Star or anyone else. Mark Joseph Dep. at pp. 122:12 – 123:2.

5

# ARGUMENT

## I. PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR BREACH OF CONTRACT/WARRANTY

### A. The Western Star Warranty is a Limited Warranty

There is no issue of fact that the Western Star Warranty is a limited express warranty that places specifically defined rights, duties, and obligations upon the parties. The Western Star Warranty (1) does not apply to the Engine; (2) limits the Plaintiffs' remedy to the repair or replacement of any defective component or part; (3) expressly excludes the recovery of consequential damages; and (4) disclaims all implied warranties. (SOF 5 – 8). At the time of purchase, Plaintiffs accepted the terms and conditions of the Western Star Warranty, including the Limited Warranty, Warranty Disclaimer, and Limitation of Liability. (SOF 2 and 4). Plaintiffs' allegations underlying their claim for breach of contract/warranty (Count 1) against Western Star extend to issues beyond the scope of the Western Star Warranty. As such, this Court should grant summary judgment in favor of Western Star and dismiss Count 1 of Plaintiffs' Amended Complaint.

#### 1. *The Engine is Not Covered by the Western Star Warranty*

The Western Star Warranty expressly and conspicuously excludes any and all warranty coverage, express or implied, relating to the Engine. (SOF 5). Plaintiffs have alleged only two issues with the Truck unrelated to the Engine: squeaking cabinets in the bunk and the drive axles slinging axle grease. (SOF 16). The other issues that Plaintiffs have alleged which relate to the Truck have been repaired pursuant to the Western Star Warranty (SOF 14 – 15) and, as such, there can be no breach of express or implied warranty, breach of contract, or violation of the Lemon Law by Western Star with respect to those issues. All other issues Plaintiffs have alleged

relate to the Engine and, therefore, fall outside of the express coverage of the Western Star Warranty.

### 2. *The Western Star Warranty Limited Western Star's Liability*

The Western Star Warranty disclaims all consequential damages and limits the Plaintiffs' remedy to the repair or replacement of any defective components or parts. Nebraska allows for such limitation of express warranties. See Neb. Rev. Stat. U.C.C. § 2-316(1); Koperski v. Husker Dodge, Inc., 208 Neb. 29, 46, 302 N.W.2d 655, 664 (1981) (noting the manufacturer's unquestionable ability to legally limit liability under an express warranty).

#### a. *Consequential Damages Are Not Available Under the Western Star Warranty*

Plaintiffs alleged damages for "incurred lodging and other expenses" and "additional damages" that they "still don't know." (SOF 18). Under Nebraska law, a manufacturer may exclude consequential damages. See Neb. Rev. Stat. U.C.C. § 2-316(1); see also Koperski, 208 Neb. at 46, 302 N.W.2d at 664. The Western Star Warranty specifically disclaims all "**special or consequential damages including, but not limited to, injuries to persons or damage to property, loss of profits or anticipated profits, or loss of vehicle use.**" (SOF 7) (emphasis in original). Again, at the time of purchase, Plaintiffs accepted this Limitation of Liability. (SOF 2 and 4). Therefore, Plaintiffs cannot recover consequential damages because Western Star has explicitly disclaimed liability for any such damages. Aside from Plaintiffs' inability to provide evidence supporting this unknown amount of "additional damages," Plaintiffs' ability to recover any consequential damages has been disclaimed.

      *b.*  *Western Star's Obligations Under the Western Star Warranty is Repair or Replacement of Any Defective Component or Part*

  The Western Star Warranty also limits Plaintiffs' remedy to the repair or replacement of any defective component or part. (SOF 6). Parties are free to modify available remedies and may "limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies…to repair and replacement of nonconforming goods or parts." Neb. Rev. Stat. U.C.C. § 2-719. Warranty clauses limiting the remedy to repair and replacement provide "both a remedy to the buyer, whereby he may obtain goods conforming to the contract, and a limitation of the liability of the manufacturer." Koperski, 208 Neb. at 46, 302 N.W.2d at 664.

  The Western Star Warranty is similar to the warranty the Nebraska Supreme Court enforced in Koperski v. Husker Dodge, 208 Neb. 29, 302 N.W.2d 655. In that case, an automobile buyer sought to recover "direct and consequential damages" from the manufacturer due to alleged defects in the automobile. Id. at 31, 302 N.W.2d at 657. The manufacturer's written warranty provided that it would repair or replace defective parts. Id. at 43, 302 N.W.2d at 663. The warranty expressly disclaimed "[l]oss of use of the vehicle, loss of time, inconvenience, expense for gasoline, telephone, travel or lodging, loss or damage to personal property, commercial loss, loss of revenue, or other matters not specifically included are not covered." Id. at 44, 302 N.W.2d at 663.

  Koperski's automobile was riddled with defects. In the six-week period after delivery, the buyer returned the vehicle for warranty repairs to the carburetor, the radiator, the rear end, and the transmission. Id. at 32-38, 302 N.W.2d at 658-60. Notwithstanding, the Koperski court determined that the manufacturer had expressly limited its warranty to the repair or replacement of defective parts. Id. at 45, 302 N.W.2d at 664. The manufacturer had fully complied with its limited warranty and the case was dismissed. Id. at 48-49, 302 N.W.2d at 665.

8

Here, as in Koperski, Plaintiffs' undisputed sole remedy was to seek repair or replacement of the two issues that they claim were never resolved: (1) squeaky cabinets in the bunk and (2) greasy drive axles. (SOF 16). The Western Star Warranty expressly provides that "Western Star's sole obligation shall be the repair or replacement, at Western Star Trucks' option, of any defective component or part." (SOF 6). Plaintiffs have now sold the Truck and received fair market value for it and, even if they still had the Truck, their remedy would be limited to repair or replacement of defective components or parts. As such, this Court should enter summary judgment in favor of Western Star on Plaintiffs' claims for consequential damages.

### B. Plaintiffs Cannot Show that the Truck was Defective

Plaintiffs cannot recover on their claim for breach of contract/warranty because they cannot show that the Truck was defective. A claim for breach of express warranty requires that the plaintiff present evidence of a defect. Durrett v. Baxter Chrysler-Plymouth, Inc., 198 Neb. 392, 395-96, 253 N.W.2d 37, 39 (1977). "Thus, where no evidence is provided to show that a defect in a product caused the plaintiff's damages, he or she cannot recover for breach of warranty." Genetti v. Caterpillar, Inc., 261 Neb. 98, 112, 621 N.W.2d 529, 541 (2001) (internal quotes and citations omitted). Expert testimony is "the best means of proving the existence of a defect." Id. at 114, 621 N.W.2d at 542. Plaintiffs, however, have not designated any expert to support their claim for breach of express warranty. In light of this Court's refusal to extend the deadline for the disclosure of expert witnesses (Doc. 67), Plaintiffs are now precluded from designating any expert to support their claim that the Truck was defective.

Plaintiffs' claim for breach of contract/warranty is pendent upon their ability to prove that the Truck was defective because of squeaky cabinets and greasy drive axles. (SOF 16). Without

expert testimony, Plaintiffs are unable to show that the cabinets or the drive axles were defective. Moreover, the circumstances surrounding Plaintiffs' significant use and operation of the Truck clearly reveal that the Truck was not defective. Plaintiffs drove the Truck over one-quarter of a million miles during a fifteen (15) month period of time. To put that many miles on the Truck in that short a period of time would have required Plaintiffs to have driven the Truck approximately *500 miles every day that they owned it*. In December of 2004, Plaintiffs sold the Truck for fair market value—$77,000.00. (SOF 10). The intake inspection conducted at that time revealed no defects in the Truck or in the Engine. (SOF 11). As such, Plaintiffs' claim for breach of contract/warranty must fail as a matter of law.

      C.     Plaintiffs Have Not Been Damaged

Plaintiffs have no evidence that the actual and fair market value of the Truck was impaired by the alleged squeaky cabinets and greasy drive axles. In Nebraska, "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Neb. Rev. Stat. U.C.C. § 2-714. In this case, Plaintiffs purchased the Truck new for $103,000.00 (SOF 1). After driving the Truck for well over a year and over 250,000 miles, Plaintiffs sold the Truck for $77,000.00. (SOF 10). In December of 2004, the fair market value of a Western Star Truck of the same make and model with the same amount of mileage with <u>no defects or problems</u> was $77,000.00. (SOF 10 – 12). Plaintiffs received fair market value for the Truck and any perceived issues with the Truck had no impact on its fair market value. (SOF 11).

As such, the Court should grant summary judgment in favor of Western Star on Plaintiffs' claim for breach of contract/warranty and dismiss Count 1 of Plaintiffs' Amended Complaint with prejudice.

## II. PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR VIOLATION OF THE LEMON LAW

In Count 2 of their Amended Complaint, Plaintiffs seek damages for violations of the Nebraska Warranty Act (the "Lemon Law") due to Western Star's alleged failure "to properly repair and replace the defects of the Truck." Amended Complaint at ¶ 19. In its simplest terms, the Lemon Law requires that: (1) the manufacturer make at least four attempts to conform a vehicle to an express warranty; (2) the attempted repairs are unsuccessful; (3) the vehicle owner provides written notice by certified mail directly to the manufacturer of the failed attempted repairs; and (4) the vehicle remains defective such that its market value is impaired despite the attempted repairs. Neb. Rev. Stat. §§ 60-2702 through 60-2704.

This Court should grant summary judgment in favor of Western Star on the Plaintiffs' Lemon Law claim because the undisputed facts demonstrate that Plaintiffs (a) failed to afford Western Star the required "reasonable number of [repair] attempts," provide Western Star with the requisite notice, or demand a new truck from Western Star; and (b) cannot establish that any defect in the Truck impaired its market value.

### A. Plaintiffs Failed to Provide Notice to or Demand Relief from Western Star

Under the Lemon Law, Plaintiffs are required to establish that they: (1) asked Western Star to repair the squeaky cabinets or greasy axles on four separate occasions; (2) sent a certified letter directly to Western Star putting it on notice of the alleged defect following the fourth unsuccessful attempt; and (3) demanded replacement of the Truck. Plaintiffs cannot establish any of these. The only evidence Plaintiffs have provided is that they claim the cabinets and axles were serviced multiple times. There is no evidence that repairs were attempted on least four occasions. There is no evidence that Plaintiffs ever provided written notice directly to Western

Star of the allegedly defective cabinets or axles. Plaintiffs have admitted that they never demanded a new Truck from Western Star or anyone else. (SOF 19).

### B. The Market Value of The Truck Was Not Impaired

Additionally, it is an affirmative defense to a claim for violation of the Lemon Law if the alleged defect "does not substantially impair the use and market value" of the vehicle. Neb. Rev. Stat. § 60-2703. As discussed above, Plaintiffs received fair market value for the Truck when they sold it to Omaha Truck Center in December of 2004. See supra Section I.C. As such, Plaintiffs were not damaged by any defect that they alleged because the market value of the Truck was not impaired. As a result, there is no issue of fact for trial regarding Western Star's ability to establish its affirmative defense to Plaintiffs' Lemon Law claim and, therefore, it is entitled to judgment as a matter of law.

Plaintiffs have already received the remedy to which they would be entitled. Under the Lemon Law, Plaintiffs may have the Truck replaced or may return it for a refund of the "purchase price including all sales taxes, license fees, and registration fees and any similar governmental charges, *less a reasonable allowance for the consumer's use of the vehicle*." Id. (emphasis added). In this case, it is undisputed that Plaintiffs sold the Truck for $77,000.00, the actual and fair market value of the Truck after Plaintiffs had driven it 251,651 miles. (SOF 10). Thus, there is no genuine issue of material fact that Plaintiffs received the remedy to which they were entitled under the Lemon Law and, as a result, this Court should grant summary judgment in favor of Western Star.

### III. PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR BREACH OF IMPLIED WARRANTIES

Plaintiffs claim that Western Star's "failure to provide a truck fit for its intended purpose constitutes a breach of implied warranties." Amended Complaint at ¶ 22. They neglect,

12

however, to state which of the implied warranties, merchantability or fitness, that they contend Western Star breached. Regardless, they cannot maintain this claim because Western Star properly disclaimed <u>all</u> implied warranties—a disclaimer which Plaintiffs unequivocally accepted. (SOF 2, 3, and 8).

Nebraska recognizes that parties may agree to waive certain rights and claims that may arise by operation of law. <u>See</u> Neb. Rev. Stat. U.C.C. § 2-316. The Nebraska U.C.C. permits a seller to exclude or disclaim the implied warranty of merchantability and the implied warranties of fitness for a particular purpose. <u>Koperski</u>, 302 Neb. at 42, 302 N.W.2d at 662 (noting the ability of a manufacturer to expressly exclude implied warranties on the sale of the automobile under the Nebraska U.C.C.). As required in Nebraska, the disclaimers in the Western Star Warranty were both "conspicuous" and specifically mentioned the implied warranties of merchantability and fitness. Neb. Rev. Stat. U.C.C. § 2-316(2).

Under the Nebraska U.C.C., a term or clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Neb. Rev. Stat. U.C.C. § 1-201(10). The Western Star Warranty's disclaimer language was set off from other text, displayed prominently in bold print, and provided in pertinent part that:

> **The foregoing limited warranty is exclusive and in lieu of all other warranties whether written, oral or implied including, but not limited to, any warranty of merchantability or fitness for purpose.**
>
> **This limited warranty specifically excludes any other warranties or conditions provided for by law, whether statutory or otherwise.**

(SOF 8) (emphasis in original). Through this language, <u>all</u> other warranties not expressly provided for by the Western Star Warranty, implied or otherwise, were explicitly disclaimed. In keeping with the requirements of the Nebraska U.C.C., the disclaimer specifically and

13

conspicuously mentions "**merchantability**" and expressly disclaims in writing any warranty of "**fitness for purpose**." (SOF 8) (emphasis in original).

Additionally, the disclaimer of the implied warranty of merchantability was provided to Plaintiffs at the time they purchased the Truck. Adams v. American Cyanamid Co., 1 Neb. App. 337, 351, 498 N.W.2d 577, 587 (1992). All that is necessary is that the buyer actually received the document containing the disclaimer, there is no requirement that the disclaimer actually be read. See Id. at 351, 498 N.W.2d at 587; see also Kennedy v. Cornhusker Hybrid Co., 146 Neb. 230, 19 N.W.2d 51 (1945) (holding that actual knowledge of a disclaimer by the buyer is not necessary if it is printed on the package containing the article or upon an invoice or catalog so that it "might have come to the buyer's attention"). It is undisputed that Plaintiffs received the Western Star Warranty and agreed to its terms when they purchased the Truck on August 30, 2003. (SOF 2 and 4).

## CONCLUSION

Plaintiffs have no damages, as they received full value for the Truck. Their component defect claims do not trigger the Lemon Law and they cannot demonstrate the elements of such a claim were satisfied. There were no implied warranties and, thus, there could be no breach of any such warranty. Each of their claims fail, and Western Star is entitled to judgment as a matter of law. Based on the foregoing, Western Star Trucks Sales, Inc. respectfully requests that this Court enter judgment in its favor on all Counts of Plaintiffs' Amended Complaint, dismiss all claims against Western Star with prejudice, award Western Star attorneys fees and costs associated with defending this action, and grant such other and further relief as justice requires.

Respectfully submitted, this 6th day of April, 2007.

                    WESTERN STAR TRUCK SALES, INC.

By:    <u>/s/ Victor C. Padios</u>
        Bryan S. Hatch, #21009
        Victor C. Padios, #23265
        Stinson Morrison Hecker LLP
        1299 Farnam Street, Suite 1501
        Omaha, NE 68102
        (402) 342-1700
        Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the 6th day of April, 2007, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all CM/ECF participants.

                    <u>/s/ Victor C. Padios</u>
                    Victor C. Padios