IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARK JOSEPH and MARY JOSEPH, | ) | Case No. 8:05CV0421 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| WESTERN STAR TRUCK SALES, INC., | ) | |
| and DETROIT DIESEL CORPORATION, | ) | |
| | ) | |
| Defendants**.** | ) | |

**BRIEF IN SUPPORT OF DETROIT DIESEL CORPORATION'S
MOTION FOR SUMMARY JUDGMENT**

PREPARED AND SUBMITTED BY:

Bryan S. Hatch, #21009
Victor C. Padios, #23265
Stinson Morrison Hecker LLP
1299 Farnam Street, Suite 1501
Omaha, NE 68102
(402) 342-1700
Attorneys for Defendants

**INTRODUCTION**

This is a U.C.C. breach of warranty case in which Plaintiffs have alleged various defects with a 2004 Western Star truck, VIN 5KJJABCK34PM20541, (the "Truck"), and the Truck's 14.1 liter Series 60 Detroit Diesel engine (the "Engine") which was purchased in August of 2003. Even though Plaintiffs sold the Truck in December of 2004, receiving fair market value commensurate with a truck free of defects, Plaintiffs brought this lawsuit alleging causes of action against Detroit Diesel for Breach of Contract/Warranty (Count 1), Violation of Lemon Law (Count 2), and Breach of Implied Warranties (Count 3). See Amended Complaint ¶¶ 12-23.

Plaintiffs' claim for breach of contract/warranty fails as a matter of law because the alleged defects fall outside of the scope of coverage of the express warranty. At the time of purchase, Plaintiffs were offered and accepted a limited express warranty (the "Detroit Diesel Warranty") that applied only to the Engine, disclaimed all implied warranties, excluded consequential damages, and limited the Plaintiffs' remedy to the repair or replacement of any defective component or part. Additionally, Plaintiffs cannot show that they were damaged by any alleged defect because they received fair market value for the Truck when they sold it in December of 2004, after having driven it over one-quarter of a million miles during a fifteen (15) month span. As a result, the Court should enter summary judgment in favor of Detroit Diesel on Count 1 Breach of Contract/Warranty.

Plaintiffs also cannot maintain their cause of action for violations of the Lemon Law. Plaintiffs cannot establish that they afforded Detroit Diesel the required "reasonable number of [repair] attempts," provided Detroit Diesel with the requisite notice, or demanded a new truck from Detroit Diesel. Additionally, the undisputed facts demonstrate that no defect in the Truck

substantially impaired its market value. Consequently, the Court should enter summary judgment in favor of Detroit Diesel on Count 2 Violations of the Lemon Law.

Finally, the Detroit Diesel Warranty expressly disclaimed <u>all</u> implied warranties, including the implied warranty of merchantability and any implied warranty of fitness for a particular purpose. The disclaimer complied in all respects with Neb. Rev. Stat. U.C.C. § 2-316. As a result, the Court should enter summary judgment in favor of Detroit Diesel on Count 3 of Plaintiffs' Amended Complaint.

For these reasons, summary judgment in favor of Detroit Diesel is appropriate on all of Plaintiffs' claims.

## **UNDISPUTED STATEMENT OF FACTS ("SOF")**

### **Plaintiffs Purchased the Truck**

1. Plaintiffs purchased a 2004 Western Star truck, VIN 5KJJABCK34PM20541, (the "Truck"), which contained a 14.1 liter Series 60 Detroit Diesel engine (the "Engine") in August of 2003 for $103,500. Amended Complaint at ¶ 6.

2. At purchase, Plaintiffs were offered and accepted a Limited Warranty on New Detroit Diesel Series 60 Engines ("Detroit Diesel Warranty") by executing a Customer Acceptance Form. Amended Complaint at ¶ 7; Deposition of Mark V. Joseph ("Mark Joseph Dep."), excerpts attached as Exhibit 1, at p. 7:7-13; the Detroit Diesel Warranty and the Customer Acceptance Form are attached as Exhibit 2.

### **The Detroit Diesel Warranty**

3. Plaintiffs acknowledged and accepted the terms and conditions of the Detroit Diesel Warranty, which only "covers Engine REPAIRS to correct any malfunction occurring

during the WARRANTY PERIOD resulting from defects in material or workmanship." Exhibit 2 at p. 1 (emphasis in original).

    4.    Under the heading "**Repairs**," the Detroit Diesel Warranty expressly limits Plaintiffs' remedy to repair or replacement of defective components or parts:

> DDC may, at its discretion, replace rather than repair components. A reasonable time must be allowed to perform the warranty repair after taking the engine to the authorized service outlet. …Repairs will be performed during normal business hours.

(Exhibit 2 at p. 1).

    5.    The Detroit Diesel Warranty disclaims consequential damages:

> **This Warranty Does Not Cover:**
> **Incidental or Consequential Damages**
> DDC is not responsible for incidental or consequential costs or expenses which the owner may incur as a result of a malfunction or failure covered by this warranty, such as vehicle damage, communication expenses, meals, lodging, overtime, loss of use of the Engine or vehicle ("downtime"), loss of time, inconvenience, cargo loss or damage, and other similar costs and expenses.

(Exhibit 2 at p. 1)(emphasis in original).

    6.    Under the heading "**Other Limitations**" the Detroit Diesel Warranty also expressly disclaims all implied warranties:

> The performance of REPAIRS is the exclusive Owner's remedy under this warranty. DDC does not authorize any person to assume or create for it any other obligation or liability in connection with the Engine or the Accessories.
> THIS LIMITED WARRANTY AND THE EMISSIONS CONTROL WARRANTY ARE THE ONLY WARRANTIES APPLICABLE TO THE ENGINE AND ACCESSORIES AS USED IN ON-HIGHWAY VEHICLE APPLICATIONS. DETROIT DIESEL CORPORATION MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. DETROIT DIESEL CORPORATION SHALL NOT BE LIABLE FOR ANY

4

>   INCIDENTAL OR CONSEQUENTIAL DAMAGES AS DESCRIBED ABOVE

(Exhibit 2 at p. 1)(emphasis in original).

**Plaintiffs Sold the Truck**

7. On December 2, 2004, Plaintiffs sold the Truck to Omaha Truck Center in Omaha, Nebraska, and purchased a 2005 Freightliner truck. Affidavit of Lee Grund ("Grund Affidavit") at ¶ 3, attached as Exhibit 3. True and correct copies of the purchase contract and invoice of the December 2, 2004, transaction are attached as Exhibits A and B, respectively, to the Grund Affidavit.

8. Plaintiffs sold the Truck for $77,000.00, its actual and fair market value. Grund Affidavit at ¶ 7; Affidavit of Dave Struby ("Struby Affidavit") at ¶ 4, attached as Exhibit 4.

9. When they sold the Truck, an intake inspection revealed no problems with or defects in the Truck and, therefore, no problem or defect had any impact on the Truck's actual and fair market value. Grund Affidavit at ¶¶ 4 and 6; Struby Affidavit at ¶¶ 7 – 10.

10. At the time of the Trade, the Truck had 251,651 miles on it and had been in service for over fifteen (15) months between August 30, 2003, and December 2, 2004. Grund Affidavit at ¶ 5.

11. On February 2, 2005, Omaha Truck Center resold the Truck to Truck Specialist, Inc. for $77,400.00. Grund Affidavit at ¶ 8. A true and correct copy of the invoice of the sale to Truck Specialist, Inc. is attached as Exhibit D to the Grund Affidavit.

**The Present Action and Alleged Problems with the Engine**

12. Repair or replacement work was performed on the Engine pursuant to the Detroit Diesel Warranty at no charge or expense to Plaintiffs. Mark Joseph Dep. at pp. 11:18–13:15;

30:18–35:17; 51:15–52:4; 57:8–14; 59:9–16; 61:2–4; 63:11–14; 63:15–64:7; 64:14–16; 64:17–66:20; 66:22–68:9.

13. All work performed under the Detroit Diesel Warranty was completed to Plaintiffs' satisfaction except Plaintiffs contend that they should not have been charged $221.00 for dynamometer testing required to repair the turbocharger and turbo speed sensor and an apparent exhaust leak at the Engine's "S pipe" was allegedly never rectified. Id. at pp. 35:1–2; 36:5–9; 56:2–4; 61:2–9; 68:10–14.

14. Despite receiving fair market value of $77,000.00 for the Truck in December of 2004, Plaintiffs seek damages in the amount $103,500.00 (the original purchase price of the Truck), even after they had driven it over 250,000 miles. Amended Complaint at p. 4.

15. Plaintiffs also seek consequential damages for "incurred lodging and other expenses" in the amount of $3,500 plus additional damages in an amount they "still don't know." Amended Complaint at ¶ 15; Mark Joseph Dep. at pp. 89:21–90:25; 126:7–22.

16. Plaintiffs never made any oral or written demand for a new truck from Detroit Diesel or anyone else. Mark Joseph Dep. at pp. 122:12–123:2.

6

## ARGUMENT

### I. PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR BREACH OF CONTRACT/WARRANTY

A. The Detroit Diesel Warranty is a Limited Warranty

There is no issue of fact that the Detroit Diesel Warranty is a limited express warranty that places specifically defined rights, duties, and obligations upon the parties. The Detroit Diesel Warranty (1) applies only to the Engine; (2) limits the Plaintiffs' remedy to the repair or replacement of any defective component or part; (3) expressly excludes the recovery of consequential damages; and (4) disclaims all implied warranties. (SOF 3-6). At the time of purchase, on August 30, 2003, Plaintiffs acknowledged and accepted the terms and conditions of the Detroit Diesel Warranty. (SOF 2). Plaintiffs' allegations underlying their claim for breach of contract/warranty (Count 1) against Detroit Diesel extend to issues beyond the scope of the Detroit Diesel Warranty. As such, this Court should grant summary judgment in favor of Detroit Diesel and dismiss Count 1 of Plaintiffs' Amended Complaint.

*1.   The Detroit Diesel Warranty Covers Only the Engine*

The express coverage of the Detroit Diesel Warranty extends only to issues relating to the Engine. (SOF 3). An alleged exhaust leak at the Engine's S pipe is the only issue Plaintiffs have alleged with the Engine that was never repaired to their satisfaction. (SOF 13). The other issues that Plaintiffs have alleged which relate to the Engine have been repaired pursuant to the Detroit Diesel Warranty (SOF 12) and, as such, there can be no breach of express or implied warranty, breach of contract, or violation of the Lemon Law by Detroit Diesel with respect to those issues. All other issues Plaintiffs have alleged relate to the Truck and, therefore, fall outside of the

express coverage of the Detroit Diesel Warranty.[1]  As such, any claims against Detroit Diesel based on issues unrelated to the Engine fail as a matter of law.

### 2. *The Detroit Diesel Warranty Limited Detroit Diesel's Liability*

The Detroit Diesel Warranty disclaims all consequential damages and limits the Plaintiffs' remedy to the repair or replacement of any defective components or parts.  Nebraska allows for such limitation of express warranties.  See Neb. Rev. Stat. U.C.C. § 2-316(1); Koperski v. Husker Dodge, Inc., 208 Neb. 29, 46, 302 N.W.2d 655, 664 (1981) (noting the manufacturer's unquestionable ability to legally limit liability under an express warranty).

#### a. *Consequential Damages Are Not Available Under the Detroit Diesel Warranty*

Plaintiffs alleged damages for "incurred lodging and other expenses" and "additional damages" that they "still don't know." (SOF 15).  Under Nebraska law, a manufacturer may exclude consequential damages.  See Neb. Rev. Stat. U.C.C. § 2-316(1); see also Koperski, 208 Neb. at 46, 302 N.W.2d at 664.  The Detroit Diesel Warranty, specifically and expressly disclaims all special or consequential damages:

> [Detroit Diesel] is not responsible for incidental or consequential costs or expenses which the owner may incur as a result of a malfunction or failure covered by this warranty, such as vehicle damage, communication expenses, meals, lodging, overtime, loss of use of the Engine or vehicle ("downtime"), loss of time, inconvenience, cargo loss or damage, and other similar costs and expenses.

(SOF 5).  Again, at the time of purchase, Plaintiffs acknowledged and accepted the terms of the Detroit Diesel Warranty.  (SOF 2).  Therefore, Plaintiffs cannot recover consequential damages because Detroit Diesel has explicitly disclaimed liability for any such damages.  Aside from

---

[1] Plaintiffs have alleged that they should not have been charged $221.00 for dynamometer testing that was required to fix issues with the turbocharger and turbo speed sensor. (SOF 13). Plaintiffs, however, have not designated expert testimony demonstrating either (1) that the dynamometer testing was unnecessary to diagnose the problem or (2) that the dynamometer testing should have been covered by the Detroit Diesel Warranty.

8

Plaintiffs' inability to provide evidence supporting this unknown amount of "additional damages," Plaintiffs' ability to recover any consequential damages has been disclaimed.

> b. *Detroit Diesel's Obligations Under the Detroit Diesel Warranty is Repair or Replacement of Any Defective Component or Part of the Engine*

The Detroit Diesel Warranty also expressly limits the remedy for breach of contact or breach of warranty to the repair to the engine or its component parts resulting from defects in material or workmanship. Parties are free to modify available remedies and may "limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies . . . to repair and replacement of nonconforming goods or parts." Neb. Rev. Stat. U.C.C. § 2-719. Warranty clauses limiting the remedy to repair and replacement provide "both a remedy to the buyer, whereby he may obtain goods conforming to the contract, and a limitation of the liability of the manufacturer." Koperski, 208 Neb. at 46, 302 N.W.2d at 664.

The Detroit Diesel Warranty is similar to the warranty the Nebraska Supreme Court enforced in Koperski v. Husker Dodge, 208 Neb. 29, 302 N.W.2d 655. In that case, an automobile buyer sought to recover "direct and consequential damages" from the manufacturer due to alleged defects in the automobile. Id. at 31, 302 N.W.2d at 657. The manufacturer's written warranty provided that it would repair or replace defective parts. Id. at 43, 302 N.W.2d at 663. The warranty expressly disclaimed "[l]oss of use of the vehicle, loss of time, inconvenience, expense for gasoline, telephone, travel or lodging, loss or damage to personal property, commercial loss, loss of revenue, or other matters not specifically included are not covered." Id. at 44, 302 N.W.2d at 663.

Koperski's automobile was riddled with defects. In the six-week period after delivery, the buyer returned the vehicle for warranty repairs to the carburetor, the radiator, the rear end,

9

and the transmission. Id. at 32-38, 302 N.W.2d at 658-60. Notwithstanding, the Koperski court determined that the manufacturer had expressly limited its warranty to the repair or replacement of defective parts. Id. at 45, 302 N.W.2d at 664. The manufacturer had fully complied with its limited warranty and the case was dismissed. Id. at 48-49, 302 N.W.2d at 665.

Here, as in Koperski, Plaintiffs' undisputed sole remedy was to seek repair or replacement of the only issue that they claim was never resolved—the alleged issue with the exhaust. (SOF 12–13). The Detroit Diesel Warranty provides Detroit Diesel's obligation shall be to repair malfunctions "resulting from defects in material or workmanship," or at its option, replace any defective components. (SOF 3–4). Plaintiffs have now sold the Truck and received fair market value for it and, even if they still had the Truck, their remedy would be limited to repair of the Engine or replacement of defective components. As such, this Court should enter summary judgment in favor of Detroit Diesel on Plaintiffs' claims for consequential damages.

B.   Plaintiffs Cannot Show that the Engine was Defective

Plaintiffs cannot recover on their claim for breach of contract/warranty because they cannot show that the Engine was defective. A claim for breach of express warranty requires that the plaintiff present evidence of a defect. Durrett v. Baxter Chrysler-Plymouth, Inc., 198 Neb. 392, 395-96, 253 N.W.2d 37, 39 (1977). "Thus, where no evidence is provided to show that a defect in a product caused the plaintiff's damages, he or she cannot recover for breach of warranty." Genetti v. Caterpillar, Inc., 261 Neb. 98, 112, 621 N.W.2d 529, 541 (2001) (internal quotes and citations omitted). Expert testimony is "the best means of proving the existence of a defect." Id. at 114, 621 N.W.2d at 542. Plaintiffs, however, have not designated any expert to support their claim for breach of express warranty. In light of this Court's refusal to extend the

10

deadline for the disclosure of expert witnesses (Doc. 67), Plaintiffs are now precluded from designating any expert to support their claim that the Engine was defective.

Plaintiffs' claim for breach of contract/warranty is pendent upon their ability to prove that the Engine was defective. Without expert testimony, Plaintiffs are unable to show that the issues with the exhaust were the result of a defect. Moreover, the circumstances surrounding Plaintiffs' significant use and operation of the Truck clearly reveal that the Engine was not defective. Plaintiffs drove the Truck over one-quarter of a million miles during a fifteen (15) month period of time. To put that many miles on the Truck in that short a period of time would have required Plaintiffs to have driven the Truck approximately *500 miles every day that they owned it*. In December of 2004, Plaintiffs sold the Truck for fair market value—$77,000.00. (SOF 8). The intake inspection conducted at that time revealed no defects in the Truck or in the Engine. (SOF 9). As such, Plaintiffs' claim for breach of contract/warranty must fail as a matter of law.

    C.    Plaintiffs Have Not Been Damaged

Plaintiffs have no evidence that the actual and fair market value of the Truck was impaired by the alleged issues with the exhaust. In Nebraska, "the measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Neb. Rev. Stat. U.C.C. § 2-714. In this case, Plaintiffs purchased the Truck new for $103,000.00 (SOF 1). After driving the Truck for well over a year and over 250,000 miles, Plaintiffs sold the Truck for $77,000.00. (SOF 8 and 10). In December of 2004, the fair market value of a Western Star truck of the same make and model with the same amount of mileage with <u>no defects or problems</u> was $77,000.00. (SOF 8–10). Plaintiffs received fair market value for the Truck and any perceived issues with the Truck had no impact on its fair market value. (SOF 9).

11

As such, the Court should grant summary judgment in favor of Detroit Diesel on Plaintiffs' claim for breach of contract/warranty and dismiss Count 1 of Plaintiffs' Amended Complaint with prejudice.

## II.     PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR VIOLATION OF THE LEMON LAW

In Count 2 of their Amended Complaint, Plaintiffs seek damages for violations of the Nebraska Warranty Act (the "Lemon Law") due to Detroit Diesel's alleged failure "to properly repair and replace the defects of the Truck." Amended Complaint at ¶ 19. In its simplest terms, the Lemon Law requires that: (1) the manufacturer make at least four attempts to conform a vehicle to an express warranty; (2) the attempted repairs are unsuccessful; (3) the vehicle owner provides written notice by certified mail directly to the manufacturer of the failed attempted repairs; and (4) the vehicle remains defective such that its market value is impaired despite the attempted repairs. Neb. Rev. Stat. §§ 60-2702 through 60-2704.

This Court should grant summary judgment in favor of Detroit Diesel on the Plaintiffs' Lemon Law claim because the undisputed facts demonstrate that Plaintiffs (a) failed to afford Detroit Diesel the required "reasonable number of [repair] attempts," provide Detroit Diesel with the requisite notice, or demand a new truck from Detroit Diesel; and (b) cannot establish that any defect in the Truck impaired its market value.

### A.     Plaintiffs Failed to Provide Notice to or Demand Relief from Detroit Diesel

Under the Lemon Law, Plaintiffs are required to establish that they: (1) asked Detroit Diesel to repair the issues with the exhaust on at least four separate occasions; (2) sent a certified letter directly to Detroit Diesel putting it on notice of the alleged defect following the fourth unsuccessful attempt; and (3) demanded replacement of the Engine. The only evidence Plaintiffs have provided is that they claim the issues with the exhaust were serviced multiple times. Other

12

than Plaintiffs' self-serving testimony, Plaintiffs have not presented evidence that repairs were attempted on least four occasions. There is no evidence that Plaintiffs ever provided written notice directly to Detroit Diesel of the issues with the exhaust. Plaintiffs have admitted that they never demanded a new Truck from Detroit Diesel or anyone else. (SOF 16).

      B.      The Market Value of the Truck Was Not Impaired

Additionally, it is an affirmative defense to a claim for violation of the Lemon Law if the alleged defect "does not substantially impair the use and market value" of the vehicle. Neb. Rev. Stat. § 60-2703. As discussed above, Plaintiffs received fair market value for the Truck when they sold it to Omaha Truck Center in December of 2004. See supra Section I.C. As such, Plaintiffs were not damaged by any defect that they alleged because the market value of the Truck was not impaired. As a result, there is no issue of fact for trial regarding Detroit Diesel's ability to establish its affirmative defense to Plaintiffs' Lemon Law claim and, therefore, it is entitled to judgment as a matter of law.

Plaintiffs have already received the remedy to which they would be entitled. Under the Lemon Law, Plaintiffs may have the Truck replaced or may return it for a refund of the "purchase price including all sales taxes, license fees, and registration fees and any similar governmental charges, *less a reasonable allowance for the consumer's use of the vehicle*." Id. (emphasis added). In this case, it is undisputed that Plaintiffs sold the Truck for $77,000.00, the actual and fair market value of the Truck after Plaintiffs had driven it 251,651 miles. (SOF 8 and 10). Thus, there is no genuine issue of material fact that Plaintiffs received the remedy to which they were entitled under the Lemon Law and, as a result, this Court should grant summary judgment in favor of Detroit Diesel.

## III. PLAINTIFFS CANNOT RECOVER ON THEIR CLAIM FOR BREACH OF IMPLIED WARRANTIES

Plaintiffs claim that Detroit Diesel's "failure to provide a truck fit for its intended purpose constitutes a breach of implied warranties." Amended Complaint at ¶ 22. They neglect, however, to state which of the implied warranties, merchantability or fitness, that they contend Detroit Diesel breached. Regardless, they cannot maintain this claim because Detroit Diesel properly disclaimed <u>all</u> implied warranties—a disclaimer which Plaintiffs unequivocally accepted. (SOF 2 and 6).

Nebraska recognizes that parties may agree to waive certain rights and claims that may arise by operation of law. <u>See</u> Neb. Rev. Stat. U.C.C. § 2-316. The Nebraska U.C.C. permits a seller to exclude or disclaim the implied warranty of merchantability and the implied warranties of fitness for a particular purpose. <u>Koperski</u>, 302 Neb. at 42, 302 N.W.2d at 662 (noting the ability of a manufacturer to expressly exclude implied warranties on the sale of the automobile under the Nebraska U.C.C.). As required in Nebraska, the disclaimers in the Detroit Diesel Warranty were both "conspicuous" and specifically mentioned the implied warranties of merchantability and fitness. Neb. Rev. Stat. U.C.C. § 2-316(2).

Under the Nebraska U.C.C., a term or clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." Neb. Rev. Stat. U.C.C. § 1-201(10). The Detroit Diesel Warranty's disclaimer language was set off from other text, displayed prominently, and provided in pertinent part that:

> **Other Limitations**
> The performance of REPAIRS is the exclusive Owner's remedy under this warranty. DDC does not authorize any person to assume or create for it any other obligation or liability in connection with the Engine or the Accessories.
> THIS LIMITED WARRANTY AND THE EMISSIONS CONTROL WARRANTY ARE THE ONLY WARRANTIES APPLICABLE TO THE ENGINE AND ACCESSORIES AS USED IN ON-HIGHWAY VEHICLE

14

> APPLICATIONS.  DETROIT DIESEL CORPORATION MAKES NO OTHER WARRANTIES EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.  DETROIT DIESEL CORPORATION SHALL NOT BE LIABLE FOR ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES AS DESCRIBED ABOVE.

(SOF 6) (emphasis in original).  Through this language, <u>all</u> other warranties not expressly provided for by the Detroit Diesel Warranty, implied or otherwise, were explicitly disclaimed.  In keeping with the requirements of the Nebraska U.C.C., the disclaimer specifically and conspicuously mentions "MERCHANTABILITY" and expressly disclaims in writing any warranty of "FITNESS FOR A PARTICULAR PURPOSE."  (SOF 6) (emphasis in original).

Additionally, the disclaimer of the implied warranty of merchantability was provided to Plaintiffs at the time they purchased the Truck.  <u>Adams v. American Cyanamid Co.</u>, 1 Neb. App. 337, 351, 498 N.W.2d 577, 587 (1992).  All that is necessary is that the buyer actually received the document containing the disclaimer, there is no requirement that the disclaimer actually be read.  <u>See</u> <u>Id.</u> at 351, 498 N.W.2d at 587; <u>see also</u> <u>Kennedy v. Cornhusker Hybrid Co.</u>, 146 Neb. 230, 19 N.W.2d 51 (1945) (holding that actual knowledge of a disclaimer by the buyer is not necessary if it is printed on the package containing the article or upon an invoice or catalog so that it "might have come to the buyer's attention").  It is undisputed that Plaintiffs received the Detroit Diesel Warranty and agreed to its terms when they purchased the Truck on August 30, 2003.  (SOF 2).

## **CONCLUSION**

Plaintiffs have no damages, as they received full value for the Truck.  Their component defect claims do not trigger the Lemon Law and they cannot demonstrate the elements of such a claim were satisfied.  There were no implied warranties and, thus, there could be no breach of any such warranty.  Each of their claims fail, and Detroit Diesel is entitled to judgment as a

matter of law.  Based on the foregoing, Detroit Diesel Corporation respectfully requests that this Court enter judgment in its favor on all Counts of Plaintiffs' Amended Complaint, dismiss all claims against Detroit Diesel with prejudice, award Detroit Diesel attorneys fees and costs associated with defending this action, and grant such other and further relief as justice requires.

Respectfully submitted, this 6th day of April, 2007.

>DETROIT DIESEL CORPORATION,
>
>By:   /s/ Victor C. Padios
>      Bryan S. Hatch, #21009
>      Victor C. Padios, #23265
>      Stinson Morrison Hecker LLP
>      1299 Farnam Street, Suite 1501
>      Omaha, NE 68102
>      (402) 342-1700
>      Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 6th day of April, 2007, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all CM/ECF participants.

>/s/ Victor C. Padios
>Victor C. Padios