## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| MARK JOSEPH and MARY JOSEPH, | ) | Case No. 8:05CV0421 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **DEFENDANTS' BRIEF IN SUPPORT** |
| | ) | **OF MOTION TO STRIKE AFFIDAVIT** |
| WESTERN STAR TRUCK SALES, INC., | ) | **OF MARK JOSEPH** |
| and DETROIT DIESEL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

To oppose Western Star's and Detroit Diesel's (collectively as "Defendants") motions for summary judgment, Plaintiffs Mark and Mary Joseph (collectively as "Plaintiffs") offered the April 30, 2007, Affidavit of Mark Joseph ("Joseph Affidavit"). That affidavit is wholly incompetent under Rule 56(e), as it consists of improper lay opinions, hearsay, speculation and flat contradictions of Mark Joseph's previous testimony. For these reasons, Western Star and Detroit Diesel move to strike the Joseph Affidavit.

## ARGUMENT

### 1.     The Law of Rule 56 Affidavits

Affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); Anderson v. Dillard's, Inc., 109 F.Supp.2d 1116, 1121 (E.D. Mo. 2000); see also.Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983). An affidavit based upon 'information and belief' is insufficient as a matter of law. Pioneer Hi-Bred International, Inc. v. Ottawa Plant Food, Inc., 283 F.Supp.2d 1018, 1027 (N.D. Iowa 2003), citing Automatic Radio Mfg. Co. v. Hazeltine Research, 339 U.S. 827, 831

1

(1950); see also El Deeb v. Univ. of Minnesota, 60 F.3d 423, 428-29 (8th Cir. 1995); Williams v. Evangelical Retirement Homes of Greater St. Louis, 594 F.2d 701, 703 (8th Cir. 1979); Hanke v. Global Van Lines, Inc., 533 F.2d 396, 398 (8th Cir. 1976).

A court may consider only those portions of an affidavit that would be admissible at trial. Fed.R.Civ.P. 56(e); Firemen's Fund Ins. Co. v. Thien, 8 F.3d 1307, 1310 (8th Cir. 1993); McSphadden v. Mullins, 456 F.2d 428, 430 (8th Cir. 1972). The court must disregard all inadmissible and speculative allegations and speculation. Howard v. Columbia Public School Dist., 363 F.3d 797, 801 (8th Cir.), cert. denied, 125 S.Ct. 436 (2004); Lee v. National Life Assurance Co. of Canada, 632 F.2d 524, 529 (5th Cir. 1980); Roberts v. Hochstetler, 592 F.Supp. 703, 706 (N.D. Ind. 1983).

A party cannot submit an affidavit to oppose summary judgment where that affidavit contradicts his previous sworn testimony. A court must disregard such an affidavit. Knudsen v. United States, 254 F.3d 747, 752 (8th Cir. 2001); American Airlines, Inc. v. KLM Royal Dutch Airlines, Inc., 114 F.3d 108, 111 (8th Cir. 1997); Wilson v. Westinghouse Elec. Corp., 838 F.2d 286, 289 (8th Cir. 1988); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1366 (8th Cir. 1983). Affidavits in support of summary judgment pleadings that do not meet the standards of Rule 56(e) are subject to a motion to strike. See Fed.R.Civ.P. 12(f); see also McSpadden v. Mullins, 465 F.2d 428, 430 (8th Cir. 1972).

## 2. The Joseph Affidavit Contradicts Joseph's Sworn Deposition Testimony.

The Joseph Affidavit contradicts Mark Joseph's earlier sworn deposition testimony in a blatant attempt to create an issue of fact to defeat Defendants' motions for summary judgment. The rule is resoundingly clear that a party may not attempt to resist summary judgment by submitting an affidavit inconsistent with earlier sworn testimony.

       *a.*      *Mark Joseph Now Claims to be an Expert on Large Truck Mechanics*

In his deposition testimony, Mark Joseph flatly admitted that he is incompetent to discuss heavy truck mechanical issues. "I'm not a mechanic and don't profess to be." Mark Joseph Depo. at p. 39:5-6. His affidavit directly contradicts that admission. He now seeks to offer testimony regarding the design and operation of, and purported defects in, multiple mechanical systems and components on the Truck and the Engine. See, e.g., Joseph Aff. at ¶¶ 2, 4, 5, 6, 7, 8, 9, 14, 16, 17, 18, 19, 20, and 21, set forth infra in section 4(b). The Joseph Affidavit is an improper attempt to interject a multitude of speculative and conclusory expert opinions regarding defects in the Truck, the Engine, or their component parts, none of which have any evidentiary value. Joseph Aff. at ¶¶ 7, 8, 9, 14, 19, 20, and 21. Affidavits should be disregarded when the statements contained therein are nothing more than "conclusory allegations and subjective beliefs." Mitchell v. Toledo Hospital, 964 F.2d 577, 584-85 (6th Cir. 1992).

Despite Joseph's inappropriate attempt to label himself an expert, the Court should disregard his opinions. Plaintiffs never disclosed Mark Joseph as an expert pursuant to Fed.R.Civ.P. 26(a)(2) and, through their own inaction, were precluded from doing so. (ECF 67). Any opinion testimony from Joseph regarding the mechanical workings of or any alleged defect in the Truck, the Engine, or their component parts is inappropriate and inadmissible expert testimony. Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 284 (8th Cir. 1995), cert. denied, 516 U.S. 822 (1995) (trial court did not abuse discretion in excluding undisclosed expert); Trost v. Trek Bicycle Corp., 162 F.3d 1004, 1008-09 (8th Cir. 1998); see also In re Air Crash at Charlotte, NC, 982 F.Supp. 1086, 1088 (D.S.C.1997) (court has the power under Rule 37(c)(1) to exclude witnesses who are not properly identified).

Given the inconsistency between Mark Joseph's admission that he is not a mechanic and the his affidavit's speculative opinions regarding defects offered solely to resist the present summary judgment motions, this Court should disregard the April 30, 2007, Affidavit as a matter of law. The above-referenced paragraphs of the Joseph Affidavit, among others, should be stricken because they contradict Mark Joseph's sworn deposition testimony.

### 3.    Mark Joseph Cannot Testify to the Value of the Truck

#### a.  Mark Joseph Now Claims to be an Expert on Large Truck Mechanics

Despite the Order clearly precluding Plaintiffs from offering expert testimony, Mark Joseph seeks to inject his personal opinion on how much value the Truck lost due to the problems he claims appeared in the Truck and Engine. Joseph Aff., ¶¶ 29-30. His claimed lost value amounts are based on "a great deal of research." Id. Plaintiffs never offered any discovery, documents or testimony about this "research." "A party may not defeat a summary judgment motion by reference to 'phantom' documents not supplied to the court." Connick v. Teachers Ins. and Annuity Assn. of America, 784 F.2d 1018, 1020 (9th Cir. 1986). Furthermore, even if there were some source identified in Mr. Joseph's unidentified "research," a statement of the substance of written instruments or of an affiant's interpretation of those instruments is insufficient to establish an issue of fact. North Dakota State Univ. v. United States, 255 F.3d 599, 607 (8th Cir. 2001).

#### b.  Plaintiffs failed to disclose the "research" supporting subsequent opinions

Rule 56(e) requires that "sworn or certified copies of all papers and parts thereof referred to in an affidavit shall be attached thereto or served therewith." Wells Dairy, Inc. v. Travelers Indemnity Company of Illinois, 241 F.Supp.2d 945, 956 (N.D. Iowa 2003). "Where an affidavit does not meet these standards, it is subject to a motion to strike." Anderson, 109 F.Supp.2d at

1121; see also McSpadden v. Mullins, 465 F.2d 428, 430 (8th Cir. 1972).   Despite their obligations, Plaintiffs have failed to comply with discovery in providing the information and documents referenced in the Joseph Affidavit.  Specifically, the testimony in Paragraph 29 of the Joseph Affidavit regarding reduction in value of the Truck due to the engine is purportedly based on "a great detail of research regarding cost of replacement of the engine."   Similarly, in Paragraph 30, Mark Joseph testifies that alleged problems with the cabinetry and drive axles reduced the value of the Truck "based upon the research I have done to determine what it would cost to repair and replace the cabinets and the drive axles."  Plaintiffs, however, never referenced nor produced any of the "research" on which Mark Joseph now attempts to rely.

4.      **The Joseph Affidavit Lacks Sufficient Foundation**

The majority of the Joseph affidavit is improper because it is not based on first hand knowledge.   Mark Joseph seeks to testify to hearsay, based on unidentified sources, and unsupported opinions outside his personal knowledge.   Under Rule 56, no such testimony is proper in summary judgment proceedings.

*a.  The Joseph Affidavit is Based on Hearsay*

The Joseph Affidavit is inadmissible because it is based in large part on hearsay.  In particular, the affidavit incorporates the hearsay testimony of Jason Berg, a mechanic with Interstate Power Systems.  Not only have Plaintiffs never disclosed Jason Berg as an expert witness, but, in an improper attempt to use Jason Berg's hearsay statements, the Joseph Affidavit repeatedly refers to Mr. Berg as an employee of Detroit Diesel.  This assertion is false and contradicts Plaintiffs' Rule 26 Disclosures where they identified Jason Berg as an employee of Interstate Power Systems.  Jason Berg has never been employed by Detroit Diesel or any of the Defendants.  Affidavit of Jason Berg at ¶ 3.  Furthermore, Mark Joseph has known that Mr. Berg

was an employee of Interstate Power Systems since he served his initial disclosures on March 31, 2006, which he verified again when on May 1, 2007, the day <u>after</u> he signed the Joseph Affidavit.   True and correct copies of Plaintiffs' Initial and Supplemental Disclosures are attached hereto as Exhibit 3 and Exhibit 4 respectively.

Based on the above, Defendants move to strike the following paragraphs and/or excerpts of the Joseph Affidavit because that the statements and opinions are hearsay:

> i.   Paragraph 8, the purported testimony that "Jason Berg at Detroit Diesel informed me that the EGR Cooler was leaking and that they needed to replace it."
>
> ii.   Paragraph 10, the purported testimony that "when we took the truck into Detroit Diesel, Jason Berg informed us it was a problem with the Cold Pipe."
>
> iii.   Paragraph 11, the purported testimony that "when I asked Jason or his technician why they had these loaded up and ready for shipment, he stated that they were defective EGR Coolers with coolant leaks and Cold Pipes with exhaust leaks that were ready to be shipped back to Detroit Diesel."
>
> iv.   Paragraph 13, the purported testimony that "Jason Berg at Detroit Diesel informed us the way the S Pipe was designed in the truck allowed the S Pipe to wiggle around up into the exhaust manifold which would blare the beveled edges of the manifold and the upper part of the S Pipe down. Thus, the S Pipe would not fit right in the exhaust manifold, which then caused a leak"

v.      Paragraph 14, the purported testimony that "Jason Berg from Detroit Diesel also confirmed that the system controlling the Turbocharger was malfunctioning and needed a valve replaced."

vi.     Paragraph 19, the purported testimony that "each time, the dealer would either tell us slinging axle grease was not a problem and refused to repair the axles, or the dealer would try to repair it and failed to fix the problem."

vii.    Paragraph 21, the purported testimony that "we had to take the truck in for service on the issue to Wick's Truck Sales and the representatives there confirmed the truck had a bad fan clutch."

viii.   Paragraph 25, the purported testimony that "Jason Berg at Interstate Detroit Diesel told me that Detroit Diesel had not produced a kit to fix the EGR system and he did not know when the kit would be available" . . . "while we were there on one occasion in either late 2003 or early 2004, Jason stated, 'boy, you guys are really having a lot of problems with this truck,' and shook his head."

These statements are clearly based on inadmissible hearsay, either from Jason Berg or some other unidentified source.  It is well-settled that "a party may not rely on inadmissible hearsay in opposing a motion for summary judgment."  Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1319 (8th Cir. 1986).  As such, Defendants ask that the Court strike the foregoing portions of the Joseph Affidavit.

> b. *The Joseph Affidavit is Conclusory, Speculative, and Contains Improper Expert Opinion Testimony*

Paragraphs 2, 7, 8, 9, 11, 12, 14, 16, 19, 20, 21, 27, 29, and 30 of the Joseph Affidavit consist of Mark Joseph's irrelevant, unsubstantiated and unfounded conclusions and opinions,

completely lacking in foundation and evidentiary value.  Each of these paragraphs speculate concerning mechanical issues, alleged defects, and valuation of the Truck.  Mark Joseph has no personal knowledge of any of these areas, and thus offers nothing more than conjecture.

Through his affidavit, Mark Joseph offers lay opinions, and hopes to drape them with credibility through references to work experience as a truck driver.  He opines that there were various defects with the truck and/or its components including the Turbocharger, EGR Cooler, Cold Pipe, Turbo Speed Censor, S Pipe, air pressure system, cabinetry, rear main seal, electrical system, and/or fan clutch.  All of this despite the fact that Mark Joseph has testified under oath that "I'm not a mechanic and don't profess to be."  Mark Joseph Aff. at p. 39:5-6.

Given the breadth of the purported defects in the truck, coupled with the specialized knowledge, training, and experience that would be necessary to provide competent testimony regarding any purported defects, Mr. Joseph was required to submit an expert witness disclosure. At no time have Plaintiffs disclosed Mark Joseph as an expert.  Even more, the April 30, 2007 Affidavit of Mark Joseph was served approximately nine (9) weeks after the Court imposed deadline for Plaintiffs' disclosure of experts.  In fact, this Court denied Plaintiffs' motion to extend the deadline for expert disclosure finding that Plaintiffs had not made "any effort to take the relevant depositions during the pendency of this motion 'to finalize their determination as to whether an expert witness is necessary' or explain who they would depose or how such depositions would aid their determination."  (ECF 67).

As a result, Defendants move the Court to strike the following paragraphs and/or excerpts of the Joseph Affidavit on the basis that the statements and opinions are either inadmissible expert opinions or based solely on Mark Joseph's speculation and conjecture:

    i.      Paragraph 2, the purported testimony that Mr. Joseph "learned about the components of and operation of said trucks, and became able to identify when a truck was not running properly."

    ii.     Paragraph 7, the purported testimony that there were "several problems with the engine" including "the truck's Turbocharger system ("Turbocharger"), EGR Cooler, Cold Pipe, Turbo Speed Censor, S Pipe, air pressure system on the Turbocharger, and the rear main seal had an oil leak" and "problems with the air conditioner not cooling, the drive axle slung grease, there was an electrical problem with the truck, and a problem with the fan clutch as well."

    iii.    Paragraph 8, the purported testimony that Mr. Joseph discovered that there was a "problem" with the Turbocharger and any purported testimony that "I knew that coolant loss was a problem."

    iv.    Paragraph 9, the purported testimony regarding "problems with the EGR Cooler because there was an internal leak in the cooling line."

    v.     Paragraph 11, the purported testimony that Mark Joseph "saw pallets full of EGR Coolers and Cold Pipes which looked like they were ready to be shipped."

    vi.    Paragraph 12, the purported testimony that "we knew we had a problem because when we tried to pull out of town, it lost power, the turbo exhaust gas temperature went up, smoke flew out of the truck's stacks, and the truck would not go up a hill."

vii.     Paragraph 14, the purported testimony that "there are air leaks in the air pressure system on the Turbocharger that needed replacement.  The Turbocharger acted like it was out and not working properly.  The fuel consumption was way up and the power was down.  I recognize these problems based on my previous experience as a truck driver."

viii.    Paragraph 16, the purported testimony that "I could tell the cabinets were wearing where they were not supposed to wear as a result."

ix.      Paragraph 19, the purported testimony regarding "grease running down the axles" . . . "that such symptoms signaled a problem.  As there is nothing else in the area that holds grease besides the drive axles, I knew that the drive axles needed to be replaced."

x.       Paragraph 20, the purported testimony that "I knew it was a problem with the socket or wiring going to the socket.  I knew this based on my previous experience as a truck driver."

xi.      Paragraph 21, the purported testimony that "I knew, based on my previous experience as a truck driver, that these were problems [with the clutch fan]."

xii.     Paragraph 27, the purported testimony that "my wife experienced health problems as a result of the truck, as she felt headaches from the S Pipes exhaust leak."

xiii.    Paragraph 29, the purported testimony that "this figure is based upon a great detail of research regarding cost of replacement of the engine and admissions by Detroit Diesel personnel that they were unable to fix the

problem" and any purported testimony that "in order to replace the engine, they would generally need to pull the old engine out and put the new engine in after disconnecting all of the associated systems, and taking the clutch and transmission off as well."

xiv.   Paragraph 30, the purported testimony that "this is based on the research I have done to determine what it would cost to repair and replace the cabinets and the drive axles"; any purported testimony that "in order to repair and replace the cabinets, they would have to pull out all of the cabinets, replace the two parts that had the elongated holes in them, and install the cabinets correctly with the rubber gaskets"; and any purported testimony that "with regard to the drive axles, they would have to pull all of the tires and wheels off, remove the axles currently on the truck, and put new axles in."

Plaintiffs have failed to designate Mark Joseph as an expert witness.  These defects alleged by Mark Joseph, coupled with his opinions regarding mechanical workings of the Truck, the Engine, and their component parts, must be submitted through expert testimony (Fed. R. Evid. 702) and not from someone who is "not a mechanic and [does not] profess to be."  Mark Joseph Depo. at p. 39:5-6.  The Joseph Affidavit violates virtually every aspect of Rule 56(e) and, therefore, the Court should strike it in its entirety.

## CONCLUSION

Based on the foregoing, Western Star and Detroit Diesel respectfully request that the Court strike the Affidavit of Mark Joseph in its entirety.  In the alternative, defendants move the Court to strike Paragraphs 2, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 25, 27,

29, 30, 32, and 34 for the reason sets forth above and further request that such information not be considered with respect to Defendants' Motions for Summary Judgment (ECF 70 and 73) or admitted in evidence in this case.

Dated this 10th day of May, 2007.

WESTERN STAR TRUCK SALES, INC. and DETROIT DIESEL CORPORATION, Defendants

By:   */s/ Victor C. Padios*
Bryan S. Hatch, #21009
Victor C. Padios, #23265
Stinson Morrison Hecker LLP
1299 Farnam Street, Suite 1501
Omaha, NE 68102
(402) 342-1700
Attorneys for Defendants

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 10th day of May, 2007, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to all CM/ECF participants.

*/s/ Victor C. Padios*
Victor C. Padios