IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

MARK JOSEPH and MARY JOSEPH, )
) 8:05CV421
Plaintiffs, )
)
v. )
) MEMORANDUM AND ORDER
WESTERN STAR TRUCKS, and )
DETROIT DIESEL CORPORATION, )
)
Defendants. )
)

On August 30, 2003, plaintiffs Mark Joseph ("Mark") and Mary ("Mary") Joseph, residents of Kansas, purchased a 2004 Western Star truck ("truck") from Kansas Truck Center, for $103,500.00. This truck contained a 14.1 liter Series 60 Detroit Diesel engine. Plaintiffs worked in the trucking industry, had experience with trucks, and had previously owned or leased other trucks before this purchase. Plaintiffs had purchased the truck at issue for use in Nebraska, and therefore titled the truck in Nebraska and paid Nebraska sales tax. At the time of purchase, the plaintiffs also accepted a limited warranty and engine warranty on their truck. Filing No. 72, Attachment 2; Filing No. 75, Attachment 2. The "New Vehicle Warranty" provided that

> This warranty does not apply to engines, Allison transmissions, tires, or other components or parts which are not manufactured by Western Star Trucks and which are warranted directly by their respective manufacturers, or to routine maintenance requirements as described in the operator's and maintenance manuals. With respect to the foregoing, Western Star Trucks makes no warranty whether express, implied, statutory or otherwise including, but not limited to, any warranty of merchantability or fitness for purpose.

Filing No. 72, Attachment 2.

A later paragraph in the warranty stated that "[e]ngines and engine accessories are warranted only by the engine manufacturer. For engine warranty or service, contact

specific engine manufacturer's authorized sales and service facility." Additionally, the warranty provided that

> Western Star's sole obligation shall be the repair or replacement, at Western Star Trucks' option, of any defective component or part thereof. Such repair or replacement shall be without cost to Purchaser when performed within the time or distance limits, whichever occurs first. All components and parts are covered by the Basic Vehicle Warranty unless specifically covered by other descriptions, or otherwise excluded herein.

Filing No. 72, Attachment 2.

> The warranty further disclaimed all implied warranties:
>
> The foregoing limited warranty is exclusive and in lieu of all other warranties whether written, oral or implied including, but not limited to any warranty of merchantability or fitness for purpose.
>
> This limited warranty specifically excludes any other warranties or conditions provided for by law, whether statutory or otherwise.

Filing No. 72, Attachment 2. Lastly, the warranty provided the following limitations on liability:

> Western Star Trucks' liability to a Purchaser on any claim for loss or damage arising out of, connected with, or resulting from the contract of sale, or the performance or breach thereof, or from the design, manufacture, sale, delivery, service, repair or use of any vehicle manufactured by Western Star Trucks, shall not exceed the price to Purchaser allocable to the part of such vehicle which gives rise to the claim, and in no event shall it exceed the purchase price of the vehicle. in [sic] no event shall Western Star Trucks be liable for special or consequential damages including, but not limited to injuries to persons or damage to property, loss of profits or anticipated profits, or loss of vehicle use.

Filing No. 72, Attachment 2.

> Similarly, the Detroit Diesel Warranty provided that Detroit Diesel is
>
> not responsible for incidental or consequential costs or expenses which the owner may incur as a result of a malfunction or failure covered by this warranty, such as vehicle damage, communication expenses, meals, lodging, overtime, loss of use of the Engine or vehicle ("downtime"), loss of time, inconvenience, cargo loss or damage, and other similar costs and expenses.

2

Filing No. 75, Attachment 2. The "repair" clause of the Detroit Diesel Warranty states that

> To obtain warranty repairs, you must request the needed repairs within the warranty period from an authorized DDC service outlet. Only new genuine parts or remanufactured parts or components supplied or approved by DDC will be used. DDC may, at its discretion, replace rather than repair components. A reasonable time must be allowed to perform the warranty repair after taking the engine to the authorized service outlet. The owner is responsible for the percentage of repair costs shown under warranty period. Repairs will be performed during normal business hours.

Filing No. 75, Attachment 2 (capitalization of terms omitted).

The Detroit Diesel Warranty also provided that the

> limited warranty and the emissions control warranty are the only warranties applicable to the engine and accessories as used in on-highway vehicle applications. Detroit Diesel Corporation makes no other warranties express or implied, including any implied warranty of merchantability or fitness for a particular purpose. Detroit Diesel Corporation shall not be liable for any incidental or consequential damages as described above.

Filing No. 75, Attachment 2 (capitalization omitted).

Plaintiffs had numerous problems with their truck during their first year of ownership, and they allegedly took the truck in for repairs on more than fifteen occasions. Interstate Companies, Inc., Southwest Diesel Service, Inc., Los Angeles Freightliner, and various repair shops in Nebraska performed repair work on the truck's engine. Plaintiffs allege that while they owned the truck, it was in a repair shop for forty or more cumulative days. Filing No. 76, ¶ 23. Plaintiffs claim that due to the amount of time spent repairing the truck, plaintiffs incurred out-of-pocket costs for lodging and repairs, and they were unable to make a living. Further, plaintiffs assert that they lost their home in Cherokee, Iowa, because of their financial straits, and they were subsequently forced to use their truck as a home. Filing No. 76, ¶ 25. According to plaintiffs, Mary experienced headaches from a leak in the truck's S Pipe, and she sought medical care for this problem.

Plaintiffs brought suit in this court alleging that defendants Western Star Trucks ("Western Star"), a Washington corporation with its principal place of business in Redford Township, Michigan, and Detroit Diesel, a Michigan corporation with its principal place of business in Detroit, Michigan, denied coverage for the repair work under the warranties. Plaintiffs further claim that the problems with the truck and its engine are not repairable. On December 2, 2004, having driven the truck more than 250,000 miles, plaintiffs sold it to Omaha Truck Center in Omaha, Nebraska, for $77,000.00 and purchased a different truck.

In their amended complaint, plaintiffs assert three causes of action: (1) breach of contract/warranty; (2) violation of lemon law; and (3) breach of implied warranties. Plaintiffs request a jury trial, and relief in the amount of $103,500.00, general damages, pre- and post-judgment interest, costs, and any other relief the court deems appropriate. Jurisdiction in this case is premised on diversity of citizenship under 28 U.S.C. § 1332. This matter is now before the court on motions for summary judgment, motions to strike, and motions in limine. The court will address the motions in turn.

**Motions for Summary Judgment**

    **A.    Legal Standards**

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While courts evaluate facts in the light most favorable to the nonmoving party, "in order to defeat as motion for summary judgment, the non-moving party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis Univ.*, 167 F.3d 398, 401 (8th Cir. 1999). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

### B.  Analysis

Both Western Star and Detroit Diesel contend that they are entitled to summary judgment on plaintiffs' claims, and plaintiffs oppose their motions. Filing Nos. 70, 73, 76. According to defendants, plaintiffs' claim for breach of contract/warranty fails as a matter of law because the truck's alleged defects fall outside of the scope of coverage of the express warranty. Defendants contend that plaintiffs accepted a limited express warranty that did not apply to the engine, disclaimed all implied warranties, excluded consequential damages, and limited the plaintiffs' remedy to the repair or replacement of any defective component or part. Plaintiffs however, assert that genuine issues of material fact exist whether defendants' warranties fail for their essential purposes, and whether plaintiffs are entitled to recover consequential damages, are limited to repair and replacement, and are able to maintain a claim for breach of implied warranties.

According to Nebraska's Uniform Commercial Code ("U.C.C."), "a seller of equipment can establish exclusive, limited written warranties and limitation of damages as a remedy for breach thereof." *John Deere Co. v. Hand*, 319 N.W.2d 434, 437 (Neb. 1982); Neb. Rev. Stat. U.C.C. § 2-316 (2007). Under the U.C.C., a warranty may limit a buyer's remedy to repair and replacement of nonconforming goods or parts, and may also exclude consequential damages, if it is not unconscionable. Neb. Rev. Stat. U.C.C. § 2-719 (2007); *Trinity Prods. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 332 (8th Cir. 2007) (applying Missouri law to find that disclaimers of consequential and incidental damages in commercial contracts are generally enforceable). The U.C.C. further provides that "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in the [U.C.C.]" Neb. Rev. Stat. U.C.C. § 2-719 (2) (2007).

"[T]he purpose of an exclusive remedy of 'repair or replacement' from a buyer's viewpoint is to give him goods which conform to the contract within a reasonable time after a defect is discovered." *Arabian Agric. Servs. v. Chief Indus.*, 309 F.3d 479, 486 (8th Cir. 2002) (*quoting John Deere Co. v. Hand*, 319 N.W.2d 434, 437 (Neb. 1982)).  If the seller is given a reasonable chance to correct equipment defects, and the equipment continues functioning improperly, "the limited remedy of repair or replacement of defective parts fails of its essential purpose."  *John Deere Co.*, 319 N.W.2d at 437.

Having reviewed the motions, party briefs, and supporting evidence, the court finds genuine issues of material fact exist whether the defendants' warranties failed of its essential purpose.  Specifically, defendants argue that plaintiffs' only issue with the truck is an S pipe exhaust leak that was never repaired to their satisfaction.  Defendants maintain that plaintiffs' remaining truck problems were repaired pursuant to the Detroit Diesel Warranty.  However, plaintiffs argue that they had problems with the truck's Turbocharger System, EGR Cooler, Cold Pipe, Turbo Speed Sensor, S pipe, Air Pressure System on the Turbo Charger, fan clutch, and electric system.  Filing No. 76.  Plaintiffs also maintain that the rear main seal had an oil leak, cabinets in the bunk of the truck continuously squeaked and squealed, the driver's seat suspension air bag had a leak, the air conditioner had cooling problems, and the drive axles slung grease.  *Id*.  According to plaintiffs, they had the Turbocharger repaired several times, replaced the Turbo Speed Sensor, fixed the electrical problem, repaired the air conditioning, and repaired the oil leak in the rear main seal.

From these allegations, it remains unclear what problems, if any, relate directly to the truck's engine, what failures occurred solely with the truck, and what interrelatedness,

if any, exists between the two. Genuine issues of material fact exist whether the defendants' alleged failure to repair the truck and engine in accordance with the warranties deprived the plaintiffs of the substantial value of their bargain, thus rendering the limited warranty ineffective. Moreover, unresolved factual issues still remain whether circumstances caused an exclusive or limited remedy to fail of its essential purpose. "These are fact intensive inquiries that should be decided on a full evidentiary record[,]" and as such, summary judgment is denied as to plaintiffs' breach of contract/warranty claim and breach of implied warranties claim. *Trinity Prods. v. Burgess Steel, L.L.C.*, 486 F.3d 325, 332 (8th Cir. 2007).

Turning now to the plaintiffs' lemon law claim, the court again finds that summary judgment should be denied. Nebraska's "lemon law," Neb. Rev. Stat. § 60-2701 *et seq.*, provides that a consumer must report the nonconformity of a motor vehicle to the vehicle's manufacturer, its agent, or authorized dealer within one year of delivery or the term set forth in an express warranty, whichever date is earlier. Neb. Rev. Stat. § 60-2702 (2007). Provided an express warranty applies to the nonconforming vehicle, the manufacturer, its agent, or its authorized dealer shall make the repairs necessary to conform the vehicle to its express warranty, even if the repairs occur after the expiration of the warranty term or one-year period. *Id.* If the manufacturer is

> unable to conform the motor vehicle to any applicable express warranty by repairing or correcting any defect or condition which substantially impairs the use and market value of the motor vehicle to the consumer after a reasonable number of attempts, the manufacturer shall replace the motor vehicle with a comparable motor vehicle or accept return of the vehicle from the consumer and refund to the consumer the full purchase price including all sales taxes, license fees, and registration fees and any similar governmental charges, less a reasonable allowance for the consumer's use of the vehicle.

Neb. Rev. Stat. § 60-2703 (2007).

A "reasonable number of attempts" is defined in Nebraska's lemon law as four or more repair attempts within the express warranty term or one year following the date of delivery of vehicle, whichever is the earlier date. Neb. Rev. Stat. § 60-2704 (2007). A "reasonable number of attempts" may also exist where the vehicle is out of service for repair "for a cumulative total of forty or more days during such term or during such period, whichever is the earlier date." *Id*.

At this stage of the proceedings, it remains unclear whether the repairs occurred to conform the truck with its express warranty. The plaintiffs allege that the truck was taken for repairs on more than fifteen occasions, but defendants maintain that they were never provided written notice of plaintiffs' various problems with the truck. From the evidence adduced, the court is unsure if and how defendants were informed of plaintiffs' problems with the truck. Additionally, it remains disputed whether a reasonable number of repair attempts were made, and whether the market value of the truck was impaired. As such, summary judgment is denied as to plaintiffs' lemon law claim.

**Motions to Strike**

Plaintiffs and defendants have both filed motions to strike the other's evidence offered in support of their motions for summary judgment. Filing Nos. 84, 86. The court finds that the parties' arguments consist of evidentiary objections that have no weight or bearing on the motions for summary judgment, and therefore, the motions to strike are denied. The parties are advised that if they have any compliance or evidentiary objections with any exhibits, they may address such issues at the pretrial conference and at trial.

**Motions in Limine**

In accordance with plaintiffs' motion to strike, plaintiffs have also moved the court for an order precluding the admission of defendants' expert witnesses. Filing No. 105. Plaintiffs maintain that defendants' proposed expert opinions lack foundation, fail to meet

9

the requirements of Federal Rules of Evidence 702 and 703 and *Daubert*, and are more prejudicial than probative.  Specifically, plaintiffs argue that defendants' proposed experts lack sufficient knowledge of the truck's condition to form an opinion.  Defendants oppose the motion in limine and contend that their proposed witnesses are fact witnesses with personal knowledge of the truck at issue.

Similarly, in its motion in limine, defendants seek to exclude from evidence, among other things, Mark Joseph's affidavit, any reference to the truck having a defect, any reference to warranty work, testimony regarding lost income, health issues, and costs, and any out-of-court statements.  Having reviewed the parties' arguments, the court finds that the arguments are more appropriately the subject of evidentiary issues to be dealt with at trial, and the motions in limine are denied without prejudice to reassertion after the pretrial conference.

THEREFORE, IT IS ORDERED that:

1. Defendant Western Star Truck's motion for summary judgment, Filing No. 70, is denied;

2. Defendant Detroit Diesel Corporation's motion for summary judgment, Filing No. 73, is denied;

3. Plaintiffs' motion to strike, Filing No. 84, is denied;

4. Defendants' motion to strike, Filing No. 86, is denied;

5. Plaintiffs' motion in limine, Filing No. 105, is denied; and

6. Defendants' motion in limine, Filing No. 118, is denied.

DATED this 25th day of July, 2007.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

10